UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. _____ |
| v. | ) | |
| | ) | |
| EXXON MOBIL CORPORATION; | ) | |
| ASHLAND, INC.; EURECAT U.S., | ) | |
| INCORPORATED; AKZO NOBEL, INC.; | ) | |
| FLINT HILLS RESOURCES, LP; IRVING | ) | |
| OIL LIMITED; CONOCOPHILLIPS | ) | |
| COMPANY; TEXACO, INC.; CHEVRON | ) | |
| U.S.A., INC., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## COMPLAINT

The United States of America ("United States"), by authority of the Attorney

General and through the undersigned attorneys, acting at the request of the Administrator of the

United States Environmental Protection Agency ("EPA"), files this Complaint and alleges as

follows:

## PRELIMINARY STATEMENT

1. This is a civil action under Section 107(a) of the Comprehensive Environmental

Response, Compensation, and Liability Act of 1980, as amended, ("CERCLA"), 42 U.S.C. §

9607(a), for recovery of response costs incurred by the United States in response to the release or

threat of release and disposal of hazardous substances at the Many Diversified Interests, Inc. Site,

at Operable Unit One ("OU-1"or "OU-1 property"), located in Houston, Texas.  The Complaint

also seeks a declaratory judgment, pursuant to Section 113(g)(2) of CERCLA, 42 U.S.C. §

9613(g)(2), on liability that will be binding in future actions to recover further costs incurred at or in connection with OU-1, and, interest on response costs incurred in connection with OU-1, pursuant to Section 107(a) of CERCLA.

## JURISDICTION AND VENUE

2.   This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1345 and 42 U.S.C. §§ 9607(a) and 9613(b).

3.   Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) and (c) and 42 U.S.C. § 9613(b), because the claims arose in this judicial district and the property or area subject to this action is located in this judicial district.

## DEFENDANTS

4.   Defendant Exxon Company, now known as Exxon Mobil Corporation ("Exxon Mobil"), is a New Jersey corporation.  At times relevant to this Complaint, Defendant conducted business in the State of Texas and in this judicial district.

5.   Defendant Eurecat U.S., Incorporated ("Eurecat") is a New Jersey corporation.  At times relevant to this Complaint, Defendant conducted business in the State of Texas and in this judicial district.

6.   Defendant Akzo Nobel, Inc. ("Akzo Nobel") is a Delaware corporation.  Based upon information and belief, at times relevant to this Complaint, Akzo Nobel conducted business in the State of Texas and in this judicial district or conducted such business in conjunction with Defendant Eurecat.

7.   Defendant Flint Hills Resources, LP ("Flint Hills") is a Delaware limited partnership.  Defendant Flint Hills Resources, LP is the successor by name change and/or merger

to Koch Petroleum Group, LP, a Delaware limited partnership, Koch Refining Company, LP, a Delaware limited partnership, and Koch Refining Company, a Delaware corporation. At times relevant to this Complaint, Defendant conducted business in the State of Texas and in this judicial district.

8.      Defendant ConocoPhillips Company ("ConocoPhillips") is a Delaware corporation. At times relevant to this Complaint, Defendant conducted business in the State of Texas and, based on information and belief, in this judicial district.

9.      Defendant Ashland, Inc. ("Ashland") is a Kentucky corporation. At times relevant to this Complaint, Defendant conducted business in the State of Texas and, based on information and belief, in this judicial district.

10.      Defendant Irving Oil Limited ("Irving Oil") is a Canadian company that does business in the United States. Based upon information and belief, at times relevant to this Complaint Irving Oil conducted business in the State of Texas and in this judicial district or conducted such business in conjunction with a company based in the United States.

11.      Defendant Texaco, Inc. ("Texaco"), a Delaware corporation, was acquired by Chevron Corporation, a Delaware corporation, on October 15, 2001, with ChevronTexaco Corporation, a Delaware corporation, as the surviving corporation. On May 9, 2005, ChevronTexaco Corporation changed its name to Chevron Corporation. Chevron Corporation's major operating subsidiary in the United States, Chevron U.S.A., Inc., is a Pennsylvania corporation. At times relevant to this Complaint, Texaco and Chevron U.S.A., Inc. conducted business in the State of Texas, and, based on information and belief, in this judicial district.

12.      Each Defendant is a "person" as defined in Section 101(21) of CERCLA, 42

U.S.C. § 9601(21).

## GENERAL ALLEGATIONS

13.     The OU-1 portion of the Site is located at 3617 Baer Street, Houston, Texas.  The

Site was defined by EPA to include three operable units (OU-1, OU-2, and OU-3).  The claims

alleged in this Complaint relate only to OU-1.

14.     OU-1 or the OU-1 property consists of approximately 36 acres and is located in a

mixed residential and commercial area.

15.     Between 1926 and 1991, the Texas Electric Steel Casting Company ("TESCO")

owned the OU-1 property and operated a specialty steel manufacturing facility at OU-1.

TESCO's facility included, among other things, two plants, various furnaces located in the

plants, a warehouse, various storage tanks, and inside and outside storage areas.  TESCO's

operations also included the storage of scrap steel and iron at the facility and the use of these

materials in its production activities.

16.     In or about 1991, TESCO ceased operations at OU-1.

17.     During the time TESCO owned the OU-1 property and operated there, TESCO

entered into a Lease Agreement ("Agreement") with CanAm Resources Group, Inc. ("CanAm"),

a Texas corporation.  The Agreement allowed, among other things, CanAm's use of one of the

plants previously operated by TESCO, including one or more furnaces located within that plant.

18.     Between approximately 1986 and 1988, CanAm operated a business of reclaiming

metals from spent catalyst on the portion of OU-1 leased from TESCO.  During this period,

various companies by arrangement or agreement with CanAm sent spent catalyst to OU-1, or

CanAm by arrangement or agreement with such companies brought such companies' spent

-4-

catalyst to OU-1. As part of its operations at OU-1, CanAm stored drums of spent catalyst at OU-1 and processed spent catalyst to recover metals contained in the catalyst. Such metals included, but were not limited to, nickel and molybdenum.

19.     In or about 1988, CanAm ceased operations and abandoned approximately 4,000-5,000 drums at OU-1. Many of the drums contained spent catalyst, and some contained flammable and corrosive liquids and other liquid waste.

20.     On June 26, 1990, the Texas Water Commission ("TWC") conducted an inspection of the TESCO facility to determine the facility's compliance with Texas' solid waste regulations. Based on the inspection, TWC concluded that TESCO's noncompliance included, but was not limited to: (i) storage of waste materials at the facility in drums and (ii) areas where catalyst material had spilled or been discharged onto the ground. TWC requested that TESCO submit a compliance schedule by a specified date. TESCO did not remove the drums of catalyst or any related contaminated materials from OU-1.

21.     In April 1994, the Texas Natural Resource Conservation Commission conducted a follow-up investigation of the TESCO facility, which included performing sampling in areas of OU-1, including a drum storage area where materials had leaked or spilled from drums. Sampling revealed, among other results, elevated levels of metals, including molybdenum (lowest of the eight samples at 28,700 parts per million ("ppm") and the highest at 74,800 ppm), nickel (lowest at 223 ppm and the highest at 43,900 ppm), and lead (at least two samples at 535 ppm and 1840 ppm).

22.     In September 1998, EPA determined that the primary concern regarding the drums at OU-1 was the presence of a large number of them, containing hazardous materials, in

close proximity to residential areas.  EPA also determined that a number of the drums contained

spent heavy catalysts, and that some drums contained corrosive, flammable and oxidizing wastes.

In addition, EPA determined that some drums were in advanced stages of deterioration, and that

some drums had already deteriorated to the point of discharging hazardous substances onto the

ground.  Further, EPA concluded that the actual or potential release of hazardous substances,

pollutants or contaminants at OU-1, if not addressed, would continue to present an imminent and

substantial endangerment to public health, welfare or the environment.

23.     On January 19, 1999, the Site was listed on the National Priorities List.

24.     Between March 10, 1999 and June 15, 1999, EPA mobilized at OU-1 to stabilize

approximately 600 drums that contained flammable and corrosive liquids and liquid waste.

25.     On May 18, 1999, EPA issued an Unilateral Administrative Order for Removal

Response Activities ("UAO") to eleven (11) potentially responsible parties ("PRPs").  The UAO

required the named PRPs to conduct a removal action that included, among other things, the

removal of the drums from OU-1, disposal of said drums at an appropriate off-Site disposal

facility, and removal of visibly contaminated soil in or near the drum storage areas.

26.     In December 1999, the UAO PRPs submitted to EPA a final report which detailed

the work performed in compliance with the UAO.

27.     During the removal action under the UAO, materials removed from OU-1 and

disposed of at appropriate off-Site locations included, but were not limited to: (i) crushed drums,

95.1 tons, (ii) catalyst with soil, 410.46 tons, (iii) catalyst, 1055.98 tons, and (iv) inorganic liquid,

40.61 tons or 3 tanker trucks.  The PRPs' final report for the removal action stated that numerous

drums removed from OU-1 had catalyst, which contained nickel, and that soil removed was

-6-

contaminated with nickel.

28.     On November 28, 2003, EPA completed a Remedial Investigation ("RI"), which investigated the extent of contamination at OU-1, including a former drum storage area and other areas where drums of catalyst and piles of catalyst were found.  The RI concluded, among other things, that soil at OU-1 was contaminated with lead, and that groundwater was contaminated with molybdenum, benzo(a)pyrene, total petroleum hydrocarbons, and other hazardous substances.

29.     On July 30, 2004, EPA issued a Record of Decision ("ROD") that selected a remedy for OU-1.

30.     On March 26, 2006, EPA and Clinton Gregg Investments, Ltd. ("CGI"), which acquired the OU-1 property through an auction in a bankruptcy proceeding, entered into an Agreed Order on Consent and Covenant Not to Sue ("Agreed Order").  Under the Agreed Order, CGI agreed to implement the long-term remedy selected in the ROD.

31.     CGI completed implementation of the remedy in early 2008 and continues to monitor contaminated groundwater pursuant to the ROD.

32.     The United States has incurred unreimbursed response costs in the amount of at least $4,672,199 in connection with OU-1 under Section 104 of CERCLA, 42 U.S.C. § 9604, and continues to incur costs.  The United States' response costs were incurred in a manner not inconsistent with the National Contingency Plan ("NCP"), 40 C.F.R. Part 300.  Pursuant to Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), the United States is entitled to recover interest on such costs at the same rate as is specified for interest on investments of the Hazardous Substance Superfund established under subchapter A of chapter 98 of Title 26.

33.   On at least two occasions, by letters dated May 6, 2002, and June 4, 2007, EPA made a demand of Defendants for payment of the response costs EPA has incurred in connection with OU-1.   To date, no Defendant has reimbursed EPA for any portion of its unreimbursed past response costs.

## CLAIM FOR RELIEF

34.   The United States realleges and incorporates by reference paragraphs 1 through 33 above, as if fully set forth below.

35.   Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), as amended, provides in pertinent part:

Notwithstanding any other provision or rule of law, and subject only to the defenses set forth in subsection (b) of this section –

> (3)  any person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such person, by any other party or entity, at any facility or incineration vessel owned or operated by another party or entity and containing such hazardous substances . . . from which there is a release, or a threatened release which causes the incurrence of response costs, of a hazardous substance, shall be liable for --
>
> > (A) all costs of removal or remedial action incurred by the United States Government . . . not inconsistent with the national contingency plan; . . . .

36.   The steel facility, including the portion used by CanAm, previously operated at OU-1 falls within the term "facility" under of Section 101(9) of CERCLA, 42 U.S.C. § 9601(9).

37.   The catalyst materials contained in drums sent or brought to OU-1 for disposal or treatment contained metals, including, but not necessarily limited to, nickle and molybdenum,

each of which is a hazardous substance within the meaning of Section 101(14) of CERCLA, 42
U.S.C. § 9601(14).

38.     During the approximately ten-year period when the drums were abandoned at
OU-1, some drums deteriorated to the point of discharging or spilling their contents onto the
ground.  Drums of catalyst materials were uncovered or had no lid, and such drums were subject
to weather conditions, including rain during the ten-year period of abandonment.  Some drums
were found to be leaking.  As a result, hazardous substances in the spent catalyst contained in
drums, including, but not necessarily limited to, nickle and molybdenum, were released or
threatened to be released into the environment within the meaning of Section 101(22) of
CERCLA, 42 U.S.C. § 9601(22), and such hazardous substances were disposed of at OU-1
within the meaning of Section 101(29) of CERCLA, 42 U.S.C. § 9601(29).

39.     Liquid wastes found in the drums fall within the definition of hazardous wastes as
designated under 40 C.F.R §§ 261.21-261.23, and further designated under the National
Contingency Plan at 40 C.F.R. § 300.5.

40.     To protect the public health, welfare and the environment from the actual or
threatened release of hazardous substances into the environment from OU-1, the Administrator
of EPA, pursuant to Section 104(a) of CERCLA, 42 U.S.C. § 9604(a), has undertaken response
activities with respect to OU-1 that are not inconsistent with the NCP, including, but not limited
to, investigations, monitoring, assessing, testing, and enforcement related activities.

41.     During the period CanAm operated at OU-1, Exxon Mobil by contract,
agreement, or otherwise arranged for the disposal or treatment, or arranged with a transporter for
transport for disposal or treatment, of hazardous substances, including spent catalyst that

contained nickel, molybdenum or other metals, owned or possessed by Exxon Mobil, at OU-1, which was the location where CanAm stored and processed spent catalyst, containing the same hazardous substances.

42.    During the period CanAm operated at OU-1,  Defendants Eurecat and Akzo Nobel by contract, agreement, or otherwise arranged for the disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances, including spent catalyst that contained nickel, molybdenum or other metals, owned or possessed by Eurecat and Akzo Nobel, at OU-1, which was the location where CanAm stored and processed spent catalyst, containing the same hazardous substances.

43.    During the period CanAm operated at OU-1, Defendant Flint Hills by contract, agreement, or otherwise arranged for the disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances, including spent catalyst that contained nickel, molybdenum or other metals, owned or possessed by Flint Hills, at OU-1, which was the location where CanAm stored and processed spent catalyst, containing the same hazardous substances.

44.    Based upon information and belief, during the period CanAm operated at OU-1, Chevron, U.S.A., Inc. by contract, agreement, or otherwise arranged for the disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances, including spent catalyst that contained nickel, molybdenum or other metals, owned or possessed by Chevron U.S.A., Inc., at OU-1, which was the location where CanAm stored and processed spent catalyst, containing the same hazardous substances.

45.    Based upon information and belief, during the period CanAm operated at OU-1,

Texaco by contract, agreement, or otherwise arranged for the disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances, including spent catalyst that contained nickel, molybdenum or other metals, owned or possessed by Texaco, at OU-1, which was the location where CanAm stored and processed spent catalyst, containing the same hazardous substances.

46.     Based upon information and belief, during the period CanAm operated at OU-1, ConocoPhillips Company by contract, agreement, or otherwise arranged for the disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances, including spent catalyst that contained nickel, molybdenum or other metals, owned or possessed by ConocoPhillips, at OU-1, which was the location where CanAm stored and processed spent catalyst, containing the same hazardous substances.

47.     Based upon information and belief, during the period CanAm operated at OU-1, Irving Oil by contract, agreement, or otherwise arranged for the disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances, including spent catalyst that contained nickel, molybdenum or other metals, owned or possessed by Irving Oil, at OU-1, which was the location where CanAm stored and processed spent catalyst, containing the same hazardous substances.

48.     Based upon information and belief, during the period CanAm operated at OU-1, Ashland by contract, agreement, or otherwise arranged for the disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances, including spent catalyst that contained nickel, molybdenum or other metals, owned or possessed by Ashland, at OU-1, which was the location where CanAm stored and processed spent catalyst,

containing the same hazardous substances.

49.    Each Defendant is liable under Section 107(a)(3) of CERCLA, 42 U.S.C. § 9607(a)(3), as a person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such person, at OU-1, which was the location where CanAm stored and processed spent catalyst, containing the same hazardous substances.

50.    Each Defendant is jointly and severally liable for the unreimbursed response costs incurred by the United States in connection with OU-1, excluding any costs related to implementation of the remedy selected in the ROD.

## PRAYER FOR RELIEF

WHEREFORE, the United States requests that the Court enter judgment against Defendants jointly and severally as follows:

A.    Order Defendants to pay unreimbursed response costs incurred and to be incurred by the United States in conducting response activities in connection with OU-1, including, but not limited to removal activities, investigations, planning, oversight, and enforcement activities, but excluding any costs related to implementation of the remedy selected in the ROD.

B.    Order Defendants to pay interest on all costs, as defined in A. above, as provided under Section 107(a) of CERCLA, 42 U.S.C. § 9607(a);

C.    Award the costs of this action to the United States; and

D.    Grant such other and further relief as the Court deems just and proper.

Respectfully submitted,

IGNACIA S. MORENO
Assistant Attorney General
Environment and Natural Resources Division

LEAD ATTORNEY:      NATHANIEL DOUGLAS
Senior Attorney
Environmental Enforcement Section
U.S. Department of Justice
7611 Ben Franklin Station
Washington, D.C.  20044
(202) 514-4628

JOSE ANGEL MORENO
United States Attorney
Southern District of Texas

/s/ Keith Edward Wyatt
KEITH EDWARD WYATT
Assistant United States Attorney
TX Bar 22092900
Federal Bar 3480
Southern District of Texas
919 Milam Street
Houston, Texas
Tele. No. (713) 567-9713

OF COUNSEL:
BARBARA NANN
U.S. Environmental Protection Agency
1445 Ross Avenue
Dallas, Texas  75202-2733

%JS 44 (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
UNITED STATES OF AMERICA

**DEFENDANTS** EXXON MOBIL CORPORATION; ASHLAND, INC.; EURECAT U.S., INCORPORATED; AKZO NOBEL, INC.; FLINT HILLS RESOURCES, LP; IRVING OIL LIMITED; CONOCOPHILLIPS COMPANY; TEXACO, INC.; CHEVRON U.S.A., INC.

**(b)** County of Residence of First Listed Plaintiff _____
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant   Harris County, Texas
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Nathaniel Douglas, U.S. DOJ, ENRD, EES, P.O. Box 7611, Ben Franklin Station, Wash., D.C. 20044 (202) 514-4628

Attorneys (If Known)
Heather Corken, Fulbright & Jaworski L.L.P., 1301 McKinney, Suite 5100, Houston, Texas 77010

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☒ 1  U.S. Government Plaintiff
☐ 3  Federal Question (U.S. Government Not a Party)
☐ 2  U.S. Government Defendant
☐ 4  Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☒ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | | | |

(Additional TORTS column)
**PERSONAL INJURY**
☐ 362 Personal Injury - Med. Malpractice
☐ 365 Personal Injury - Product Liability
☐ 368 Asbestos Personal Injury Product Liability
**PERSONAL PROPERTY**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**PRISONER PETITIONS**
☐ 510 Motions to Vacate Sentence
**Habeas Corpus:**
☐ 530 General
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**IMMIGRATION**
☐ 462 Naturalization Application
☐ 463 Habeas Corpus - Alien Detainee
☐ 465 Other Immigration Actions

## V. ORIGIN (Place an "X" in One Box Only)
☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
Comprehensive Environ, Response, Compensation, and Liability Act of 1980, 42 U.S.C. 9601 et seq.
Brief description of cause:
Recovery of response costs incurred by the United States pusuant to 42 U.S.C. 9607 and 9613

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $ _____
CHECK YES only if demanded in complaint:
JURY DEMAND:  ☐ Yes  ☒ No

## VIII. RELATED CASE(S) IF ANY
(See instructions):
JUDGE _____   DOCKET NUMBER _____

DATE  03/18/2011
SIGNATURE OF ATTORNEY OF RECORD  Thaniel Douglas / Nathaniel Douglas Senior Attorney, U.S. DOJ

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____